**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Kristen E. Boysen (KB 0208)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EMEKA ORAEGBU, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**AXION LLC, AXION HEALTHCARE SOLUTIONS LLC, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION and KINGS COUNTY HOSPITAL, Jointly and Severally,**<br><br>**Defendant.** | **AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Emeka Oraegbu ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff worked for Defendants as a chart reviewer. Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims for breach of contract under the New York common law of contracts and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

2.     Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL and New York common law claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all hourly outplacement employees who worked for Defendants in New York.

3.     Plaintiff additionally brings an individual claim for retaliation under FLSA 29 U.S.C. § 215(a)(3) and NYLL § 215, as he was terminated very shortly after asking to see copies of timesheets he believed had been altered to reflect fewer hours than he worked.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants Axion LLC, Axion Healthcare Solutions LLC and New York City Health and Hospitals Corporation's businesses are located in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

7.     Plaintiff Oraegbu ("Oraegbu") was, at all relevant times, an adult individual residing in Essex County, New Jersey.

8.     Throughout the relevant time period, Plaintiff performed work for Defendants at Kings County Hospital, located at 451 Clarkson Avenue, Brooklyn, New York 11203.

9.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

**Defendants:**

10.     Upon information and belief, Axion LLC is an active New York Limited Liability Company, with its principal place of business located at 1430 Broadway, 7th Floor, New York, New York 10018.

11.     Upon information and belief, Axion Healthcare Solutions LLC (together with Axion LLC, "Axion") is an active New York Limited Liability Company, with its principal place of business located at 1430 Broadway, 7th Floor, New York, New York 10018.

12.     Axion is a contractual staffing company that provided contractual labor to Kings County Hospital.

13.     Upon information and belief, New York City Health and Hospitals Corporation ("HHC") is an active New York Domestic Not-for-Profit Corporation that operates the public hospitals and clinics in New York City, with its headquarters located at 125 Worth Street, 5th Floor, New York, NY 10013.

14.     HHC is an enterprise engaged in the operation of hospitals and/or the care of the sick and is a healthcare consortium.

15.     Upon information and belief, Defendant Kings County Hospital is a municipal hospital under the control of HHC located at 451 Clarkson Avenue, Brooklyn, New York 11203.

16.     An employee of Defendant Kings County Hospital is also an employee of Defendant HHC.

17.     Upon information and belief, Defendant HHC is responsible for the legal obligations and liabilities of Defendant Kings County Hospital and the other hospitals and facilities operated by Defendant HHC.

18.     At all relevant times, Defendants have suffered or permitted Plaintiff to work for them at Kings County Hospital.

19.     Defendants HHC and Kings County's work force includes workers from numerous health care agencies throughout New York City, including Axion.

20.     At all relevant times, Defendants operated together as a single business enterprise utilizing the same practices and policies.

21.     Defendants are jointly and severally liable as joint employers under 29 C.F.R. § 791.2 for the violations complained of herein.

22.     At all relevant time periods, Defendants jointly employed Plaintiff, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

23.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).   At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective and Class Action members within the meaning of the FLSA.

24.     At all relevant times, Plaintiff was employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

25.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since November 15, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as hourly outplacement employees (the "Collective Action Members").

27.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiff and the Collective Action Members did not receive legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

28.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

29.     Pursuant to the NYLL, Plaintiff brings his Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since November 15, 2012 and through the entry of judgment in this case (the "Class Period") who worked as hourly outplacement employees (the "Class Members").

30.     The Class Members are readily ascertainable.  The number and identity of the Class

Members are determinable from the records of Defendants.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

31.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

32.     Upon information and belief, there are well in excess of forty (40) Class Members.

33.     <u>There are questions of law and fact common to the claims of Plaintiff and the claims of the Class and such questions predominate over any questions solely affecting the individual members of the Class</u>.  These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to pay Plaintiff and the Class Members wages for all hours worked;

c.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

d.   whether Defendants breached their contracts with Plaintiff and the Class Members by failing to pay them for all hours worked;

e.   whether Defendants were unjustly enriched by failing to pay Plaintiff and the Class Members wages for all hours that they worked;

f.   whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.   whether Defendants failed to provide proper wage notice to Plaintiff and the Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

i.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.  Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class Members, is an hourly outplacement employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid wages for all hours that he worked, did not receive overtime premium pay for hours worked over forty (40) hours in a given workweek and did not receive proper wage statements or wage notices. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.  Plaintiff and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover her own damages.

36.  Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

37.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants are sophisticated parties with substantial resources. The individual Plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will

arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Businesses

38.     At all relevant times, Axion has been in the temporary and full-time healthcare staffing business. Upon information and belief, Axion currently owns, operates and manages staffing agencies in at least three (3) locations, including:  1430 Broadway, 7th Floor, New York, New York 10018; 300 Mulberry Street, Suite 305, Scranton, Pennsylvania 18503; and 311 Camino Del Rio North, Suite 416, San Diego, California 92108.

39.     According to Axion's website (http:// http://www.axionhealthcare.com), "[f]or over 25 years, we have been the preferred staffing solution for thousands of companies in the tri-state area. Recently, we expanded our reach with new Partner Companies in Arizona, New Jersey and Pennsylvania with new Partner Companies being scouted all the time."

40.     HHC is a public benefit corporation that operates over 150 health care facilities and clinics throughout New York City, including Kings County Hospital. HHC is currently the largest public healthcare system in the United States.

41.     At all relevant times, as a matter of economic reality, Defendants jointly employed Plaintiff, within the meaning of the FLSA and NYLL and the interpreting case law. *See, e.g., Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (collecting cases); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2nd Cir. 2003) and *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).

42.     At all relevant times, Plaintiff received his paycheck from Axion for work performed at Kings County Hospital, which is owned and/or controlled by Defendant HHC.

43.     Throughout his employment period, Plaintiff reported directly to Kings County

Hospital and performed on the premises for the duration of his work day.

44.　　At all relevant times, the equipment and materials used by Plaintiff to perform his work duties were provided by Kings County Hospital.

45.　　Upon information and belief, Kings County Hospital and HHC set the rates paid to Plaintiff by setting the rates paid to Axion and other agencies that provided Plaintiff and other hourly outplacement employees with Kings County and HHC for the hourly work that they provided.

46.　　At all relevant times, the duties Plaintiff performed for Kings County and HHC were integral to Defendants' operations and the conduct of their business.

47.　　At all relevant times, Defendants supervised and controlled Plaintiff's work, set the hours that he worked and scheduled him to work alongside direct employees of Kings County Hospital and HHC.

48.　　At all relevant times, Kings County Hospital tracked the hours that Plaintiff and their other hourly outplacement employees worked.

49.　　At all relevant times, Plaintiff would not have received his payment unless he completed and signed an HHC/Kings County Hospital "Time Sheet for Agency/Temporary Staff," which had to be signed by a supervisor at Kings County Hospital.

50.　　At all relevant times, Defendants HHC and Kings County Hospital had the power to terminate Plaintiff.

**Plaintiff's Work for Defendants**

51.　　Plaintiff Oraegbu worked for Axion as a chart reviewer in the Department of Quality Management at Kings County Hospital from on or about November 16, 2015 through in or around April 2016, and the Department of Utilization Management from in or around April

2016 through on or about April 30, 2018 (collectively, the "Oraegbu Employment Period").

52.     Although Plaintiff Oraegbu was provided to Kings County Hospital through a staffing agency and was required to sign a time sheet for "agency/temporary staff" in order to receive his payment from Axion, his relationship with Kings County Hospital and HHC was, in fact, relatively permanent, and Plaintiff worked at Kings County for approximately two (2) years.

53.     Plaintiff Oraegbu was initially recruited in or around October 2016 by Axion Senior Clinical Recruiter Justin Closky, who set his hourly rate and placed him at Kings County Hospital, with the approval of Director of Clinical and Allied Operations Matthew Jordan and former Managing Director of Healthcare Services Min Filban.

54.     From approximately November 16, 2015 through in or around April 2016, when Plaintiff Oraegbu worked in the Department of Quality Management at Kings County Hospital, he typically worked five (5) days per week, from 9:00 am to 5:00 pm, with a one (1) hour lunch break each day, for a total of thirty-five (35) working hours per week. Throughout this period, Plaintiff Oraegbu typically reported to Head of Quality Management for Behavioral Health, Tom Rubin.

55.     From in or around April 2016 through the end of the Oraegbu Employment Period, when Plaintiff Oraegbu worked in the Department of Utilization Management at Kings County, he typically worked five (5) days per week, Monday through Friday, from approximately 8:30 am to between 6:30 pm and 7:00 pm, and sometimes as late as between 8:30 pm and 10:00 pm, for a total of approximately fifty to sixty (50-60) hours per week. Approximately twice per month throughout his employment with Defendants, Plaintiff Oraegbu additionally performed between four to ten (4-10) hours of work on Saturdays in order to complete his heavy workload.

56.     Although Plaintiff Oraegbu was generally able to take at least one (1) or two (2) short smoke breaks per day during the time that he worked in the Department of Utilization

Management, he was rarely, if ever, able to take a break lasting a full thirty (30) minutes, let alone an uninterrupted sixty (60) minute meal break.

57.     Although Plaintiff Oraegbu typically reported to Sheron Cort, Louise Wright-Brown and Laura Shamailov, three (3) consecutive associate directors of nursing in the Department of Behavioral Health during the period that he worked in the Department of Utilization Management, he was also in frequent contact with Senior Associate Director of Behavior Health Lancelot Deygoo, Director of Nursing of the Department of Behavioral Health Donna Leno-Gordon and Senior Associate Director of Nursing Jennifer Trotman, who each oversaw Ms. Cort, Ms. Wright-Brown and Ms. Shamailov, about the hours that he worked.

58.     Throughout the Oraegbu Employment Period, Plaintiff Oraegbu was paid forty dollars ($40.00) per hour for all hours for which he received compensation.

59.     In order to receive his payment, Plaintiff Oraegbu submitted time sheets every Monday to a supervisor at Kings County Hospital for verification and signature, which were then faxed from the hospital's payroll unit to Axion. While Mr. Rubin generally signed Plaintiff Oraegbu's time sheets when Oraegbu worked for the Department of Quality Management, Ms. Cort, Ms. Wright-Brown, Ms. Shamailov, Mr. Deygoo, Ms. Trotman and Ms. Leno-Gordon often signed Plaintiff Oraegbu's time sheets when he worked in the Department of Utilization Management, depending on who was available on a particular day.

60.     Throughout the Oraegbu Employment Period, Plaintiff. Oraegbu accurately logged his arrival and departure times to and from Kings County Hospital on a sign-in sheet located at the nurse's station in the Department of Behavioral Health.

61.     Despite the fact that Plaintiff Oraegbu generally worked a minimum of fifty (50) hours per week, once he was transferred to the Department of Utilization Management in or around

April 2016, Mr. Deygoo began instructing him and all other outplacement employees in the department to indicate on any time sheets to be submitted to their respective staffing agencies that that they worked no more than between thirty-five (35) and thirty-seven and one-half (37.5) hours per week, representing a forty (40) hour work week, minus breaks. Thus, although Plaintiff Oraegbu typically worked between fifty (50) and sixty (60) hours per week starting in or around April 2016, he did not receive wages of any kind for hours worked in excess of between thirty-five (35) and thirty-seven and one-half (37.5) hours per week, much less overtime premiums for hours worked over forty (40) in a given workweek.

62.     Upon information and belief, during his employment with Defendants, Plaintiff Oraegbu entered into a contract, either express or implied, with Axion guaranteeing that he would be paid a certain hourly wage for all hours that he worked. Defendant Axion thus breached its contract(s) with Plaintiff by failing to pay him his agreed upon hourly rate for all hours that he worked.

63.     Although Plaintiff Oraegbu completed time sheets for Axion indicating that he worked no more than thirty-seven and one-half (37.5) hours per week as per Mr. Deygoo's instructions, it is clear that Axion was aware that Oraegbu typically worked well in excess of his scheduled hours. On numerous occasions, Plaintiff Oraegbu informed each of the four (4) coordinators with whom he worked at Axion, Mr. Closky, Ian Co, Derrick Rivera and Indira Reyes, as well as Mr. Jordan and Ms. Filban, about the significant extra hours that he was working and the fact that he was not receiving overtime premiums for hours worked in excess of forty (40) per week. Despite the fact that the Axion employees with whom he spoke typically responded by informing him that they would "look into it" or speak with Kings County Hospital, Plaintiff Oraegbu was ultimately never compensated for the additional hours that he worked.

64. Further, it is clear that several Kings County Hospital employees were aware of the hours that Plaintiff Oraegbu worked. On numerous occasions, Ms. Trotman personally observed Oraegbu leaving work well past his scheduled clock-out time. Further, on at least one (1) occasion, Plaintiff Oraegbu confided in Ms. Leno-Gordon about the additional hours that he was working. Although Ms. Leno-Gordon responded by informing Plaintiff Oraegbu that she would try to "get more hands" in the department such that he would not need to work as many hours to complete the tasks assigned to him, Plaintiff Oraegbu did not experience any appreciable decrease in his workload.

65. Although Mr. Deygoo was well aware of the number of hours that Plaintiff Oraegbu typically worked, he continued to instruct Oraegbu to record far fewer hours on the timesheet that he submitted to Axion for payment. On at least one (1) occasion, Mr. Deygoo informed Plaintiff Oraegbu that although he knew that Oraegbu was working significant additional hours, the hospital was "not prepared" to compensate him for all of the hours that he worked. Further, during meetings, Mr. Deygoo frequently instructed Oraegbu and other outplacement employees to indicate that they worked forty (40) hours in a week, minus a one (1) hour lunch break, on their timesheets, despite the fact that these employees routinely worked well in excess of their scheduled hours.

66. On at least five (5) occasions after Plaintiff Oraegbu complained that he and other outplacement employees were not being compensated for all hours that they worked, Mr. Deygoo informed him that he could start recording thirty-seven and one-half (37.5) hours on his Axion timesheet, instead of thirty-five (35) hours. For approximately two to three (2-3) weeks during the Oraegbu Employment Period, Mr. Deygoo similarly allowed Oraegbu to record a total of forty (40) hours per week on his timesheet, before instructing him to go back to recording only thirty-

13

seven and one-half (37.5) hours per week.

67.     In addition to the fact that Plaintiff Oraegbu was regularly instructed to record far fewer hours than he worked his Axion time sheet, approximately six (6) months prior to his termination, Oraegbu began to notice that he appeared to be missing payment for numerous additional hours.

68.     During the last month of his employment, Plaintiff Oraegbu observed several timesheets signed by Ms. Shamailov in Mr. Deygoo's office on which someone had written over his recorded time in order to reduce his hours by up to approximately two (2) hours on certain days. Plaintiff Oraegbu is currently in possession of a time sheet for the April 15, 2018 through April 21, 2018 pay period on which someone crossed out his recorded start time of 9:00 am for Thursday, April 19, 2018 and handwrote 9:50 am above it, thereby reducing his total hours worked that day from 7.5 to 6.4. The initials "L.S." (presumably Laura Shamailov, one of Oraegbu's supervisors) appear next to the alterations

69.     When Plaintiff Oraegbu reported the situation to Axion, he was told by several employees, including Mr. Jordan and Ms. Filban, that Axion was simply responding to the timesheets that they had received from the hospital and would "look into" the situation. Over the course of the next several weeks, Oraegbu repeatedly asked various secretaries of Mr. Deygoo if he could have copies of the official timesheets that were sent to Axion over the past month so that he could assess whether additional alterations had been made to his recorded hours. On approximately the third or fourth attempt to obtain copies of the timesheets, Mr. Deygoo's secretary informed Plaintiff Oraegbu that Mr. Deygoo wanted to meet with him to discuss why Oraegbu wanted copies of his timesheets. Plaintiff Oraegbu ultimately agreed to meet with Mr. Deygoo the following morning. Approximately one (1) hour after speaking with Mr. Deygoo's

secretary, Plaintiff Oraegbu was locked out of the Kings County employee portal. Shortly thereafter, Oraegbu received a call from Ms. Reyes, his coordinator at Axion, who informed him that his supervisors at Kings County did not want him to report to work the following day.

70.     During the period that Plaintiff Oraegbu worked in the Department of Utilization Management, he did not receive an accurate wage statement with each payment of wages containing an accurate accounting of the hours that he had worked and the number of overtime hours worked.

71.     Defendants failed to provide Plaintiff Oraegbu with a wage notice at the date of his hiring or by February 1 of each year.

**Defendants' Unlawful Corporate Policies**

72.     Plaintiff and the Collective and Class Action Members were paid by the same corporate policies of Defendants throughout the relevant period, including failing to pay wages for all hours worked and overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week.

73.     Defendants did not provide Plaintiff or the Class Members with proper wage notices at the time of hire or by February 1 of each year.

74.     Defendants failed to provide accurate wage statements to Plaintiff and the Class Action Members which reflected, among other information, all hours worked, including overtime hours, the regular and overtime pay rate(s) during the pay period.

75.     Despite the fact that Plaintiff and the Collective and Class Members worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) times their hourly rate.

76.     Defendant Axion breached its contracts with Plaintiff and the Class Members by

failing to pay them their agreed upon hourly rate for all hours that they worked.

77.     As stated, the exact number of such similarly situated individuals is presently unknown but is believed to be well in excess of forty (40) individuals and can be ascertained through appropriate discovery.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

78.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

80.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## <u>FAIR LABOR STANDARDS ACT – UNLAWFUL RETALIATION</u>
### (Brought on Behalf of Plaintiff Oraegbu, Individually)

82.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.    Plaintiff Oraegbu attempted to enforce his rights pursuant to the FLSA by informing various Kings County Hospital and Axion employees that he was being paid for far fewer hours than he worked and asking for access to certain records that he believed would show that hours were being shaved from his timesheets.

84.    Plaintiff Oraegbu's actions were protected activity under the FLSA.

85.    Defendants retaliated against Plaintiff Oraegbu by terminating his employment after he repeatedly asked various secretaries of a supervisor, Mr. Deygoo, if he could have access to timesheets that were sent to Axion so that he could evaluate whether alterations had been made to his recorded hours. Such actions are sufficient to dissuade any reasonable employee from enforcing his or her rights under the FLSA.

86.    By engaging in the retaliatory acts alleged herein, Defendants retaliated against Oraegbu, discriminated against him, and penalized him in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

87.    Oraegbu has suffered damages, including but not limited to loss of wages, punitive damages and interest.

88.    Oraegbu is entitled to monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

89.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

91.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE**
**(Brought on Behalf of Plaintiff and the Class Members)**

92.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.     Defendants have willfully failed to supply Plaintiff and the Class Members proper notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

94.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT**
**(Brought on Behalf of Plaintiff and the Class Members)**

95.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing an accurate number of hours worked, including overtime hours worked if applicable.

97.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars

($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Brought on Behalf of Plaintiff and the Class Members)**

98.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     Upon information and belief, Plaintiff and the Class Members entered into certain contracts with Defendants ensuring payment for all hours worked at a specified hourly rate.

100.     Defendants' failure to pay Plaintiff and the Class Members wages for all hours that they worked constituted a material breach of the contracts entered into with Defendants.

101.     As a result of Defendants' failure to pay Plaintiff and the Class Members wages for all hours that they worked, they are entitled to relief from Defendants for breach of contract under the New York common law of contracts.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiff and the Class Members)**

102.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.     Upon information and belief, Defendants agreed to pay a certain hourly rate for all hours that Plaintiffs and the Class Members worked.

104.     Based on Defendants' failure to pay Plaintiff and the Class Members wages for all

20

hours worked, Defendants were unjustly enriched at the expense of Plaintiff and the Class Members.

105.   Equity and good conscience require that Defendants pay restitution to Plaintiff and the Class Members.

106.   Plaintiff and the Class Members provided valuable services to Defendants performing work for which they expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiff and the Class Members the reasonable value of such services.

107.   As a result of Defendants' failure to pay Plaintiff wages for all hours worked and Defendants' corresponding unjust enrichment, Plaintiff and the Class Members are entitled to relief from Defendants under New York's common law of unjust enrichment.

108.   As a result of Defendants' failure to pay Plaintiff and the Class Members the reasonable value of the valuable services he rendered, they are entitled to relief from Defendants under New York's common law of quantum meruit.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNLAWFUL RETALIATION**
**(Brought on Behalf of Plaintiff Oraegbu, Individually)**

109.   Plaintiff Oraegbu repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110.   Plaintiff Oraegbu attempted to enforce his rights pursuant to the NYLL by informing various Kings County Hospital and Axion employees that he was being paid for far fewer hours than he worked and asking for access to certain records that he believed would show that hours were being shaved from his timesheets.

111.   Oraegbu's actions were protected activity under NYLL § 215.

112.   Defendants retaliated against Oraegbu by terminating his employment after he repeatedly asked various secretaries of Mr. Deygoo if he could have access to timesheets that were sent to Axion so that he could evaluate whether alterations had been made to his recorded hours. Such actions are sufficient to dissuade any reasonable employee from enforcing his or her rights under the NYLL.

113.   Plaintiff Oraegbu's actions were protected activity under the NYLL.

114.   Oraegbu has suffered damages, including but not limited to loss of wages, punitive damages and interest.

115.   Oraegbu is entitled to monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective and Class Action Members, respectfully requests that this Court grant the following relief:

a.   Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of monetary damages to be proven at trial for all unpaid wages owed to Plaintiff and the Class;

i.  An order declaring that Defendants are liable for unjust enrichment and breach of contact under New York common law;

j.  An award of two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

k.    An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members, as provided for by NYLL § 198(1-b);

l.    An award of compensatory damages for the economic damages and emotional distress, pain, and suffering caused by retaliation;

m.    An award of punitive damages under the FLSA for retaliation;

n.    An award of punitive damages under the NYLL for retaliation;

o.    An award of prejudgment and post-judgment interest;

p.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
November 16, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Kristen E. Boysen (KB 0208)
111 Broadway, Suite 1503
New York, New York 10006

Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _Axion Healthcare & Kings County Hop_ and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____
Signature

_____
EMEKA ORAEGBU
Printed Name