# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**  MARCH 14, 2019
PELTON@PELTONGRAHAM.COM

**VIA ECF**

Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *Oraegbu v. Axion LLC et al.*
> <u>Civil Action No. 18 Civ. 10688 (GBD)</u>

Dear Judge Daniels:

   This office represents named plaintiff Emeka Oraegbu ("Oraegbu" or "Plaintiff") with respect to his claims against Defendants, Axion LLC and Axion Healthcare Solutions LLC ("Axion"), New York City Health and Hospitals Corporation and Kings County Hospital ("H+H" and, collectively with Axion, the "Defendants"), in the above-referenced matter. This letter is submitted on behalf of all parties pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**  **Procedural History and Plaintiff's Allegations**

   Oraegbu commenced this action on November 15, 2018 by filing a Class and Collective Action Complaint against Defendants alleging unpaid overtime premiums under the FLSA, 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL"), §§ 650 *et seq.*, as well as wage notice and wage statement violations under the NYLL. (*See* Dkt. No. 1). Plaintiff additionally brought an individual claim for retaliation against Defendants under both the FLSA and NYLL. *Id*. On November 16, 2018, Plaintiff filed an amended complaint, adding a breach of contract claim for hours worked between thirty-five (35) and thirty-seven and one-half (37.5) hours and forty (40), for which Oraegbu alleges he did not receive wages of any kind, on the basis of Oraegbu's claims that he entered into certain express or implied contracts with the Axion Defendants guaranteeing that he would be paid a certain hourly wage for all hours that he worked. (Dkt. No. 7).

   Plaintiff was an employee of Axion Defendants, a temporary employment firm with whom H+H contracts, and was placed at Kings Hospital as a chart reviewer in the Quality Management

department from November 2015 to April 2016 and in the Utilization Management department from April 2016 to April 2018. Plaintiff alleges that he was not paid overtime for all hours worked over 40 in violation of the FLSA and NYLL while working in the UM department. Plaintiff additionally claims he was terminated in retaliation for requesting to see his timesheets sent to Axion.

On December 20, 2018, Your Honor referred the case to the SDNY Mediation Office for settlement purposes, as part of the Court's pilot program for cases involving FLSA claims. (Dkt. No. 20).

Prior to the mediation, the parties exchanged documents, including Plaintiff's timekeeping and payroll records. Also prior to the mediation, Plaintiff provided a damage analysis based primarily on plaintiff's time and pay records. The parties subsequently participated in a full-day mediation on February 11, 2019 with Michael Starr, Esq. of the SDNY Mediation Program, where an agreement was reached on all issues. This matter was resolved prior to either the Axion Defendants or the Kings County Defendants filing their respective answers to Plaintiff's Complaint.

**II.     The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Alleged Substantial Damages**

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Plaintiff alleges that he was instructed by a Kings County supervisor to indicate on any time sheets to be submitted to Axion for payment that he worked no more than between thirty-five (35) and thirty-seven and one-half (37.5) hours per week, representing a forty (40) hour work week, minus breaks. Thus, Plaintiff alleges that starting in or around April 2016, he did not receive wages of any kind for hours worked in excess of between thirty-five (35) or thirty-seven and one-half (37.5) and forty (40) hours per week, much less overtime premiums for hours worked over forty (40) in a given workweek. Plaintiff further alleges that he worked holidays and weekends without proper compensation. Plaintiff also alleges that he did not receive a proper wage statement with each pay check as required by NYLL § 195.

Finally, Oraegbu brought an individual claim for retaliation against Defendants under both the FLSA and NYLL, alleging that he was terminated for repeatedly asking a secretary of a supervisor at Kings County Hospital for copies of certain Axion timesheets after he observed sheets in his supervisor's office on which someone had written over his recorded time in order to reduce his hours on certain days.

Defendants have vigorously denied Plaintiff's allegations, including his common law claims for breach of contract and the number of hours that he claims to have worked. First, Defendants argue that Plaintiff's supervisors lacked awareness of the additional hours that Oraegbu claims to have worked, as he consistently submitted time sheets for payment showing that he worked no more than between thirty-five (35) and thirty-seven and one-half (37.5) hours per week. Defendants also contend that plaintiff was not performing compensable work during

the whole of his workday, particularly during the time periods before his shift started and after it ended. Additionally, the Axion Defendants produced certain excerpts from a contract or handbook, signed by Oraegbu, stating that "[n]o employee is allowed to work overtime without prior written permission obtained from the Entity and/or Company." Plaintiff argues that, throughout his employment period, he informed several Axion and Kings County Hospital supervisors about the additional hours that he was working and that certain Kings County staff members personally observed Oraegbu leaving work well past his scheduled clock-out time.

Indeed, prior to the mediation, Plaintiff revised his damages analysis to reflect this lower average of approximately forty-five (45) hours per week (as opposed to 47.9) for weeks worked between approximately April 2016 and April 2017, for which the Kings County Defendants did not provide arrival/departure logs.

Finally, Defendants argue that Oraegbu was terminated solely due to documented performance issues, such as submitting late reports, and that his termination did not come about due to any retaliatory motives.

Due to the fact-intensive nature of the Plaintiff's claims, it is likely that substantive answers to these disputed issues would not be resolved until after extensive additional written and deposition discovery, followed by summary judgment briefing, if not a trial. Plaintiff intended to file a motion for conditional certification of a FLSA collective action followed by a Rule 23 class certification motion and dispositive motion on certain of the disputed legal issues as described above. Defendants would strongly oppose such motions and would have sought to decertify the collective action Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiff's FLSA claims, but also his pendent common law and state law claims.[1]

As set forth above, Plaintiff's counsel created a damages analysis based on Defendants' records and Plaintiff's best estimates of the hours that he worked. For Plaintiff's "gap time" breach of contract claim, which was calculated by multiplying the number of hours Plaintiff worked between thirty-five (35) or thirty-seven and one-half (37.5) and forty (40) by Oraegbu's regular hourly rate of forty dollars ($40.00) per hour, Plaintiff calculated a total of $11,766.67. For Plaintiff's unpaid overtime claim, which was calculated by multiplying the total number of hours Oraegbu worked in excess of forty (40) by his overtime rate of sixty dollars ($60.00) per hour, or one and one-half (1.5) times his regular hourly rate of forty dollars ($40.00) per hour, Plaintiff calculated a total of $30,748.93. To calculate damages for unpaid work performed on weekends, Plaintiff multiplied an average of 7.5 hours per day, per Plaintiff's best estimates, by his overtime rate of sixty dollars ($60.00) per hour, for a total of $5,850.00. To calculate damages for unpaid work performed on public holidays, Plaintiff multiplied his regular hourly rate of forty dollars ($40.00) by 9.46 hours per day, or the average number of hours worked per day according to Defendants' records, by eight (8) public holidays in 2017 and 2018 on which Plaintiff recalls performing work on hospital grounds. In total, Plaintiff calculated a total of $3,027.20 in unpaid wages for work performed on holidays. Thus, taken together, the total damages for Plaintiff's wage

---

[3] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

claims equals $51,392.80, or approximately 88.6% of Plaintiff's alleged unpaid wage damages (not including liquidated damages, interest and penalties).

For Plaintiff's retaliation claim, Plaintiff also calculated lost earnings of $79,693.95 based on an estimated 45.39 hours of work per week, or the average number of hours that Plaintiff Oraegbu worked per week, according to Defendants' arrival/departure logs, which Plaintiff Oraegbu claims that he would have worked had he not been terminated.[2] Specifically, to calculate back pay, Plaintiff multiplied forty (40) hours per week by his hourly rate of forty dollars ($40.00) per hour and his overtime rate of sixty dollars ($60.00) per hour by 5.39 hours per week, by a total of 41.43 weeks for which he was unemployed at the time of the mediation. Plaintiff additionally calculated front pay of four (4) months, again based on an average of 45.39 hours per week, for a total of $32,976.81. Lastly, Plaintiff's damages analysis included punitive damages of $50,000.00.

Thus, when damages for retaliation, wage notice and wage statement violations, liquidated damages under the FLSA and NYLL and statutory interest on the NYLL claims at 9% per annum were added to Plaintiff's "actual" damages, the total alleged damages came out to $266,094.35.

While the settlement amount does not compensate Plaintiff for all of his liquidated damages, penalties, and all of his attorneys' fees in addition to the damages, it represents a substantial portion of Plaintiff's alleged unpaid wages damages. Moreover, the parties believe this is a fair recovery based on the risks associated with establishing the calculated damages and the risks associated with proceeding to trial.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $58,000.00 (the "Settlement Amount"),. Of that amount, $19,854.31 is payable to Plaintiff's counsel, including $781.50 in expenses for counsel's costs for filing and service of the complaint, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $ 19,072.81). The remaining $38,145.69 is payable directly to Plaintiff (the "Net Settlement Amount").

The total Settlement Amount shall be allocated in the following manner:

(1) Backpay to Plaintiff Oraegbu in the amount of $23,947.50;
(2) Liquidated damages to Plaintiff Oraegbu in the amount of $14,198.19;
(3) Attorneys' fees and costs in the amount of $19,854.31.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for all claims that were or could have been released in this action arising out of the events alleged in the Complaint. This specific language has been approved in numerous recent FLSA cases in this district in which the City of New York was a party, including *Davis, et al. v. City of New York, et al.*, 18 Civ. 3666 (Dkt. Nos. 19-20) and *Fernandes, et al. v. City of New*

---

[3] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

*York, et al*., 17 Civ. 6136 (Dkt Nos. 17-18). The parties also did not include a confidentiality provision.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award."  The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims, and (3) the Plaintiffs' attorneys fees are standard.  Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel."[3]

### IV.     Plaintiff's Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of March 14, 2019, Plaintiff's counsel has spent more than 58 hours in prosecuting and settling this matter, resulting in a lodestar of $17,951.64. Plaintiff's counsel has spent $781.50 in actual litigation costs. The portion of the settlement amount that plaintiff seek as attorney's fees (i.e. $19,072.81) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.06 multiplier of the lodestar and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement. The retainer agreement between the Named Plaintiff and his set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District, which customarily has slightly lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to Plaintiff's counsel's request for attorneys' fees.

### V.      The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[4] Generally,

---

[3] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

[4] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently

there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including a full-day mediation with Michael Starr, Esq. of the SDNY Mediation Program. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial recovery of Plaintiff's unpaid wages. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

---

contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

Respectfully submitted,

**PELTON GRAHAM LLC**

By:   */s/ Brent E. Pelton*_____
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
111 Broadway, Suite 1503
New York, New York 10006
Tel.: (212) 385-9700

*Attorneys for Plaintiff*

Enclosures

cc:     All counsel (via ECF)